STERILITE CORPORATION *vs.* CONTINENTAL CASUALTY
COMPANY.

Suffolk. March 3, 1986. — July 2, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Interest. Practice, Civil,* Judgment. *Statute,* Construction. *Damages,* Breach of contract.

In an action for breach of contract against an insurer arising from the defendant's refusal to defend the plaintiff on a products liability claim, the plaintiff was entitled to damages with interest under G. L. c. 231, § 6C, from dates on which it actually incurred legal expenses in defending the products liability claim, rather than from the date earlier in time on which the insurer had refused to defend the claim against the plaintiff. [841-842]

CIVIL ACTION commenced in the Superior Court Department on October 20, 1980.

Entry of judgment, after a decision of the Appeals Court, was ordered by *John Paul Sullivan,* J.

After review by the Appeals Court respecting the award of prejudgment interest, the Supreme Judicial Court granted leave to obtain further appellate review.

*Charles Mark Furcolo (Terrance J. Hamilton* with him) for the defendant.

*Lisa G. Arrowood* for the plaintiff.

LYNCH, J. This case presents a question regarding the appropriate way to calculate prejudgment interest under G. L. c. 231, § 6C (1984 ed.). The present controversy arises out of a judgment entered in the Superior Court awarding the plaintiff, Sterilite Corporation (Sterilite), damages for breach of a liability insurance contract. That judgment, which awarded Sterilite the costs incurred in defending itself in litigation instituted by Henry Heide, Inc. (Heide), was affirmed by the Ap-

peals Court with a modification not relevant here. *Sterilite Corp.* v. *Continental Casualty Co.,* 17 Mass. App. Ct. 316 (1983).[1] After the rescript from the Appeals Court was entered in the Superior Court, the defendant issued and delivered a draft payable to Sterilite which included interest from the date the action was filed, October 20, 1980. Sterilite did not accept that draft, however, and sought, via a motion for entry of judgment after rescript, interest from January 5, 1976, the date on which the defendant notified Sterilite that it would not defend Sterilite in the litigation initiated by Heide. The motion was allowed over objection and a judgment after rescript was entered for Sterilite on April 27, 1984. After the Appeals Court affirmed that judgment, *Sterilite Corp.* v. *Continental Casualty Co.,* 20 Mass. App. Ct. 215 (1985), we allowed the defendant's motion for further appellate review. We reverse.

The trial judge ruled that, under the terms of its policy with Sterilite, the defendant was obligated to defend Sterilite or to retain and pay for counsel of Sterilite's choosing. The damages awarded consisted of legal expenses Sterilite had incurred over a period of approximately six years. These expenses were incurred in over twenty billings, the bulk of which were submitted to Sterilite after the commencement of the action on October 20, 1980. The judge determined that interest was due from January 5, 1976, the date of the defendant's notification that it would not defend Sterilite.

In construing G. L. c. 231, § 6C,[2] the statute applicable to this case, the Appeals Court relied upon the plain meaning doctrine: "We think § 6C 'means just what it says on its face . . . .' *Sprague* v. *O'Connell,* 18 Mass. App. Ct. 230, 235 (1984). In unequivocal language it directs that the clerk of

---

[1] Further appellate review was denied, 391 Mass. 1102 (1984).

[2] General Laws c. 231, § 6C (1984 ed.), provides: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action."

court shall, see *Hashimi* v. *Kalil,* 388 Mass. 607, 609 (1983), add interest to contract damages as of the date of the breach of the contract when that date has been established. In these circumstances the statute permits no compromise; it commands a ministerial act." 20 Mass. App. Ct. at 218.

Ordinarily, if the language of a statute is plain and unambiguous it is conclusive as to legislative intent. *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.,* 392 Mass. 407, 415 (1984). *State Bd. of Retirement* v. *Boston Retirement Bd.,* 391 Mass. 92, 94 (1984). *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 704 (1984). After all, "statutory language is the principal source of insight into legislative purpose." *Bronstein, supra.* See *Commonwealth* v. *Lightfoot,* 391 Mass. 718, 720 (1984). However, time and again we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history. *Oxford* v. *Oxford Water Co.,* 391 Mass. 581, 587-588 (1984). See *Commissioner of Corps. & Taxation* v. *Boston Ins. Co.,* 328 Mass. 641, 646 (1952); *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934); *Commonwealth* v. *Welosky,* 276 Mass. 398, 401-402 (1931), cert. denied, 284 U.S. 684 (1932).[3]

Although G. L. c. 231, § 6C, commands a ministerial act, its sole or primary purpose was not to provide administrative

---

[3] We reiterate that "[i]t is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation." *Prudential Ins. Co.* v. *Boston,* 369 Mass. 542, 547 (1976). See *Harry Alan Gregg, Jr. Family Found. Inc.* v. *Commissioner of Corps. & Taxation,* 330 Mass. 538, 544 (1953); *King* v. *Viscoloid Co.,* 219 Mass. 420, 425 (1914). That canon has never been applied in a way that conflicts with the settled rule that we will look beyond the literal application of a statute in construing it in light of its purposes and history. Our primary duty is "to interpret a law so as to effectuate the intent of the Legislature in enacting it." *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 392 Mass. 811, 813 (1984). While legislative intent is determined "primarily from the words of the statute," the words of a statute are not the only source of insight into legislative intent. *Id.* We have never conceived of a broad inquiry into legislative intent as judicial legislation, but we will not "read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." *King* v. *Viscoloid Co., supra.*

ease by establishing "a fixed rule for mathematically calculable interest to avoid the costs and delays incident to disputes over details such as might be presented . . . if interest were awarded separately on many elements of damages from many different dates of accrual." *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy,* 550 F. Supp. 231, 246-247 (D. Mass. 1982) (construing G. L. c. 231, § 6B, as amended by St. 1974, c. 224, § 1, relating to prejudgment interest in tort actions), aff'd in part, rev'd in part on other grounds, 708 F.2d 1 (1st Cir.), cert. denied, 464 U.S. 936 (1983). The Legislature clearly did not opt for the greatest possible administrative ease since the statute, in accord with the common law, contemplates calculating interest from multiple points of breach of contract or demand. *United Cal. Bank* v. *Eastern Mountain Sports, Inc.,* 546 F. Supp. 945, 975-977 (D. Mass. 1982), aff'd, 705 F.2d 439 (1st Cir. 1983). *Perkins School for the Blind* v. *Rate Setting Comm'n,* 10 Mass. App. Ct. 656, 666 (1980), modified, 383 Mass. 825, 836 (1981). See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206, 209-210 (1971); *Nutting* v. *Kneeland,* 328 Mass. 497, 510 & n.1 (1952); *Selectmen of Danvers* v. *Commonwealth,* 184 Mass. 502, 515 (1904).

The Legislature intended, as the Appeals Court noted, "to abrogate the common law rule which distinguished between liquidated and unliquidated damages." 20 Mass. App. Ct. at 218. At common law, prejudgment interest in a contract action usually ran "from the date of the writ" if damages were unliquidated. *Cochrane* v. *Forbes,* 267 Mass. 417, 420 (1929). Compare *Frazer* v. *Bigelow Carpet Co.,* 141 Mass. 126 (1886). Liquidated damages, however, accrued interest from the date of the demand. *Cochrane* v. *Forbes, supra.* The enactment of G. L. c. 231, § 6C, changed the common law's concern for the form of damages into a concern for the date of the breach or demand.[4]

---

[4] The distinction between liquidated and unliquidated damages was criticized by the Supreme Court in *Funkhouser* v. *J.B. Preston Co.,* 290 U.S. 163, 168 (1933). See Comment, Prejudgment Interest: An Element of Damages Not to be Overlooked, 8 Cum. L. Rev. 521, 521-522 (1977).

The primary purpose of G. L. c. 231, § 6C, though, is the same as the common law rule before, even if different in scope. In *Perkins School for the Blind* v. *Rate Setting Comm'n,* 383 Mass. 825, 835 (1981), we stated that G. L. c. 231, § 6C, "is designed to compensate a damaged party for the loss of use or unlawful detention of money." An award of interest is made "so that a person wrongfully deprived of the use of money should be made whole for his loss." *Id.* The common law was particularly sensitive to the possibility that a liberal award of prejudgment interest could result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages.[5] See *McGrimley* v. *Hill,* 232 Mass. 462, 464 (1919); *Childs* v. *Krey,* 199 Mass. 352, 358 (1908). There is nothing in G. L. c. 231, § 6C, indicating that the Legislature intended to abandon this long-standing concern. It is our task, therefore, to interpret the statute in a manner that recognizes the elimination of the distinction between liquidated and unliquidated damages but preserves the principle of restoring to the party only that which he has lost.

The judge mechanically used January 5, 1976, as the date of the breach of contract. The Appeals Court rejected the argument that the breach of contract was on the various dates on which Sterilite was billed for the legal expenses incurred in the Heide litigation. 20 Mass. App. Ct. at 220. While the defendant was in breach of its duty to defend Sterilite on January 5, 1976, there was no duty at that time to reimburse Sterilite for legal expenses incurred at later dates. This duty arose when Sterilite, on notice that the defendant would refuse to pay for those expenses, was forced to pay those expenses itself. The dates of the payment of the various bills, which are readily ascertainable, determine the points at which Sterilite

---

[5] The rationale for not allowing interest on unliquidated sums prior to the date of the writ was that a defendant owing an unliquidated sum did not know what amount was due, nor when a fixed sum was due. The majority rule did not allow prejudgment interest on unliquidated damages at all. See *Funkhouser* v. *J.B. Preston Co.,* 290 U.S. 163, 167 (1933); Comment, Prejudgment Interest: Survey and Suggestion, 77 Nw. U.L. Rev. 192, 196-197 (1982); Comment, Prejudgment Interest: An Element of Damages Not to be Overlooked, *supra* at 521-523.

was obliged to commit sums which it rightfully should not have been obliged to commit. Before those bills were paid, Sterilite was not deprived of the use of its money. No interest is due on sums when Sterilite was not deprived of the use of those sums. Any other rule would result in a windfall for Sterilite, which the Legislature did not intend. Therefore, pre-judgment interest under G. L. c. 231, § 6C, should be calculated in this case on the basis of the various dates on which the legal bills were paid by Sterilite.

The judgment is reversed and the case is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*