APPEALS COURT 
 
 HENRY KOMOSA vs. BOARD OF ASSESSORS OF MONTAGUE

 
 Docket:
 23-P-454
 
 
 Dates:
 April 17, 2024 - November 8, 2024
 
 
 Present:
 Vuono, Rubin, & Walsh, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Real Property, Agricultural or horticultural use, Tax. Taxation, Assessors, Appellate Tax Board: appeal to Appeals Court, Real estate tax: classification of property. Administrative Law, Agency's interpretation of statute. Statute, Construction.
 
 

       Appeal from a decision of the Appellate
Tax Board. 
      J. Mark Dickison for the taxpayer.
      Ellen M. Hutchinson for board of assessors
of Montague.
      VUONO, J. 
The taxpayer, Henry Komosa, appeals from a decision of the Appellate Tax
Board (tax board), affirming the town of Montague's board of assessors'
(assessors) refusal to assess his land, consisting of 5.6 acres on some of
which he grows and harvests hay ("haying"), pursuant to G. L.
c. 61A, commonly known as the Agricultural Classification Act (c. 61A
or the statute).[1]  Land which is
classified under c. 61A receives a lower tax assessment because it is
valued on the basis of its agricultural or horticultural use rather than its
full and fair value.  See Adams v.
Assessors of Westport, 76 Mass. App. Ct. 180, 180-181 (2010).  "Essentially, c. 61A provides a tax
break for landowners who devote at least five acres of their property to
agricultural or horticultural use."[2] 
Id. at 181.  The tax board
determined that haying is a horticultural use,[3] but that Komosa devoted an
insufficient amount of its land, only approximately 3.6 acres of the 5.6 acres
at issue, to haying and that the remaining area did not have a reasonable
relationship to the haying operation. 
Consequently, the tax board concluded that the use of the property did
not meet the five-acre requirement to qualify for c. 61A classification.  Komosa challenges the tax board's
interpretation of the statute.  He
contends that the statute requires only that the property at issue exceed five
acres, produce $500 in income annually, and that some portion of the land be
devoted to horticulture use.  We conclude
that the tax board's interpretation of the statute is correct, and that its
decision is based on substantial evidence. 
Accordingly, we affirm.
      Procedural and factual background.[4]  Komosa owns several parcels of land totaling
6.6 acres in Montague, a small town located in Franklin County.  The parcels are identified by the parties and
on the relevant applications and decisions as parcels 51-96, 51-97, 51-98, and
51-100.[5]  Komosa purchased the parcels,
which were formerly known as the "Podlensky Farm," in 2007.  Soon thereafter, he began to grow and harvest
hay, which he sold to local farms as feed for animals.  Komosa asserted that this activity generated
between $750 and $925 annually, and as noted by the tax board, the town
conceded that it at least generated over $500.
      Komosa's property was classified as land
devoted to horticultural use and taxed at the reduced rate permitted by the
statute through fiscal year 2020.  In
early 2020, Komosa notified the assessors that he was changing the use of one
of the parcels, 51-100, from horticultural use to residential use, thereby
reducing the property he designated as being in horticultural use to 5.641
acres.[6]  This change prompted the
following chain of events.  First, the
assessors imposed roll-back taxes on parcel 51-100.[7]  That assessment is not at issue in this
appeal.  Second, the assessors conducted
an investigation into the use of the remaining three parcels, 51-96, 51-97, and
51-98 (the parcels at issue).  Following
that investigation, which included a visit to the property, the assessors
concluded that due to the topography of the parcels at issue, which included
trees, slopes, and wetlands, only 3.6 of the 5.6 acres were devoted to
haying.  Because c. 61A requires
that at least five acres be actively devoted to a horticultural use, the
assessors determined that the parcels at issue no longer qualified for the
reduced tax rate under c. 61A and voted to disallow or revoke the c. 61A
classification for fiscal year 2021.[8] 
For reasons not relevant here, this tax year is not at issue in this
appeal.[9]  Next, following the same
reasoning, the assessors denied Komosa's application seeking c. 61A
classification for the tax year 2022. 
Komosa filed a request for modification pursuant to G. L.
c. 61A, § 19, which the assessors denied.  Komosa then appealed to the tax board, also
pursuant to G. L. c. 61A, § 19, which ruled in favor of the
assessors.  The tax board issued findings
of fact and report at Komosa's request. 
That decision is the subject of this appeal.
      Following an evidentiary hearing, at which
Komosa and Assessor Karen Tonelli testified, the tax board found that the
assessors provided "credible, detailed testimony and
documentation."  Assessor Tonelli,
who had thirty years of experience as an assessor in Montague and other rural
towns, testified that she used a "sophisticated mapping system" to
measure those portions of the property that were not conducive to haying.  Based on her prior visit to the property, she
confirmed that some of the land was heavily treed or had significant slopes
thereby preventing those areas from being hayed.  She asserted that horticultural use took
place on only 3.6 acres of the 5.641-acre parcel.  The tax board found Tonelli's testimony
credible and agreed that Komosa failed to meet the five-acre requirement.
      Komosa provided a significantly different
description of his property and the haying operation.  Komosa acknowledged that the parcels at issue
contained some steep slopes and that not all the land was used for haying,
however, he asserted that land not used for haying was used for access roads,
bad hay compost, and brush piles, all of which supported horticulture.  In addition, Komosa challenged the assessors'
calculation of which portions of the parcels at issue were being used to grow
hay and argued that by relying on satellite imagery the assessors failed to
account for how land hidden under a canopy of trees was being used.
      The tax board rejected Komosa's claim that
the land not used for growing hay still supported horticulture, describing his
testimony on this point as "unsubstantiated."  The tax board further found that Komosa's
documentary evidence provided "no mechanism to distinguish property
lines" and that he "offered no reliable measurements" regarding
what portion of the land was comprised of trees.  The tax board thus concluded that Komosa had
failed to meet his burden of establishing that his land qualified for the lower
tax rate and that the assessors had properly denied Komosa's application for c.
61A classification.  In reaching its
conclusion, the tax board observed that while Komosa did not have to establish
that "every square inch of five acres were primarily and directly
cultivating hay to meet the requisite of G. L. c. 61A, § 4, he
had the burden of proving that portions not dedicated to haying had some
reasonable relationship to the primary use, some customary and necessary use in
raising such products and preparing them for market."
      Standard of review.  A decision by the tax board will not be
modified or reversed if it "is based on both substantial evidence and a
correct application of the law." 
Boston Professional Hockey Ass'n, Inc. v. Commissioner of Revenue, 443
Mass. 276, 285 (2005).  "Although
the proper interpretation of a statute is for a court to determine, we
recognize the [tax] board's expertise in the administration of tax statutes and
give weight to the [tax] board's interpretations."  Raytheon Co. v. Commissioner of Revenue, 455
Mass. 334, 337 (2009), citing Bell Atl. Mobile of Mass. Corp., Ltd. v.
Commissioner of Revenue, 451 Mass. 280, 283 (2008).  See Veolia Energy Boston, Inc. v. Assessors
of Boston, 483 Mass. 108, 112 (2019), quoting AA Transp. Co. v. Commissioner of
Revenue, 454 Mass. 114, 119 (2009) ("because the board is an agency
charged with administering the tax law and has expertise in tax matters, we
give weight to its interpretation of tax statutes, and will affirm its
statutory interpretation if that interpretation is reasonable"); Northeast
Petroleum Corp. v. Commissioner of Revenue, 395 Mass. 207, 213 (1985) (describing
court's "traditional deference to the expertise of the [tax] board in tax
matters involving interpretation of the laws of the Commonwealth").  In addition, where, as here, Komosa is
challenging the assessment of his property, he bears the burden of proving his
entitlement to a reduced tax rate under c. 61A. 
See Raytheon Co., supra at 339 & n.11; General Elec. Co. v.
Assessors of Lynn, 393 Mass. 591, 599 (1984).
      Discussion.  The assessors argue that the tax board
reasonably interpreted c. 61A and correctly concluded that Komosa's
property does not qualify for the tax relief afforded by c. 61A.  The tax board determined that c. 61A is
unambiguous and requires that a taxpayer must establish that at least five
acres of land is actively devoted to a horticultural use to qualify for
c. 61A classification.  The tax
board pointed first to G. L. c. 61A, § 4, which states in
relevant part:
"For general
property tax purposes, the value of land, not less than five acres in area,
which is actively devoted to agricultural, horticultural or agricultural and
horticultural uses during the tax year in issue . . . shall, upon
application of the owner of such land and approval thereof, be that value which
such land has for agricultural or horticultural purposes" (emphasis
added).
 
Next, the tax
board observed that "horticultural use" is defined in G. L.
c. 61A, § 2, as land that is "primarily and directly used"
for a stated horticultural purpose, including, as is the case here, growing
feed for animals, or when "primarily and directly used in a related manner
which is incidental to those uses . . . ."[10]  
      Based on the plain language of these two
sections of the statute, the tax board concluded that Komosa was required to
prove that at least five acres of his land were "actively devoted" to
haying.  In other words, five acres must
be "primarily and directly" used for haying or uses reasonably
related to haying -- it is not enough that "a portion of the five acres"
is "actively devoted" to horticultural use.
      Komosa contends that the tax board's
conclusion is incorrect.  He claims that
the statute is ambiguous, and points to the language of G. L. c. 61A,
§ 3, which, he contends, provides a different way to qualify land as
agricultural for tax purposes.  That
section provides in relevant part:
"Land not
less than five acres in area shall be deemed to be actively devoted to
agricultural or horticultural uses when the gross sales of agricultural,
horticultural or agricultural and horticultural products resulting from such
uses together with the amount, if any, payable under a soil conservation or
pollution abatement program of the federal government or the commonwealth total
not less than five hundred dollars per year . . . ."
Komosa asserts
that, based on the language quoted above, the statute merely requires that he
prove that his property (1) exceeds five acres, (2) generates $500 in annual
sales, and (3) is, at least in part, devoted to haying "and is not
otherwise devoted to residential, commercial, or industrial use."  
      Although there is no doubt that G. L.
c. 61A, § 3, imposes an additional requirement of a minimum annual
income, Komosa's reliance on G. L. c. 61A, § 3, alone is
misplaced because we do not read each section of the statute in isolation.  "All the words of a statute are to be
given their ordinary and usual meaning, and each clause or phrase is to be
construed with reference to every other clause or phrase without giving undue
emphasis to any one group of words, so that, if reasonably possible, all parts shall
be construed as consistent with each other so as to form a harmonious enactment
effectual to accomplish its manifest purpose" (citation omitted).  Worcester v. College Hill Props., LLC, 465
Mass. 134, 139 (2013).  We conclude, as
did the tax board, that read harmoniously, the plain language of the statute
requires that a minimum of five acres must be actively devoted to a
horticultural use or uses, or ones reasonably related thereto, to receive
c. 61A classification.  Furthermore,
the minimum income requirement set forth in G. L. c. 61A, § 3, on
which Komosa relies, is an additional, not an alternative, criterion that the
landowner must meet to qualify for c. 61A classification.  The interpretation advanced by Komosa ignores
the language of G. L. c. 61A, §§ 2 and 4, and places undue
emphasis on § 3.  As such, it is
inconsistent with a harmonious interpretation of the statute.[11]
      In addition, contrary to Komosa's
assertion, the tax board's interpretation is consistent with the intent of the
Legislature.[12]  As the Supreme Judicial
Court explained in Sudbury v. Scott, 439 Mass. 288, 299 (2003), the statute was
enacted because "[t]he Legislature was concerned with the rapidly
decreasing number of farms in the Commonwealth during the 1940's and 1950's,
and the resulting loss of a vital resource for the people of the
Commonwealth."  Therefore, the
Legislature commissioned several studies between 1955 and 1970, which proposed
as a solution the assessment and taxation of land used for agricultural and
horticultural purposes at a reduced rate. 
Id.  The studies "were
unanimous in recognizing that real estate taxation contributed to the demise of
farms," but also voiced concern that the proposed lowered assessments,
while alleviating some of the economic burden on farmers, could also
"accelerate the worrisome loss of farmland to speculators and developers
who would acquire and hold agricultural property at a low rate of taxation
while awaiting the opportunity to convert or sell the land for
development."  Id. at 299-300.  Accordingly, certain provisions, including
the roll-back tax discussed above, were included to address these
concerns.  Id. at 300-301 & n.17.
      The tax board's interpretation recognizes
the need to alleviate economic burden on farmers and protect farmland from
speculators and developers.  Komosa's
interpretation, which focuses on ownership of a minimum parcel of five acres
rather than the number of acres that are put to horticultural use, does not
achieve these goals.  In fact, Komosa's
interpretation would permit a landowner to devote a tiny portion of land to
horticultural use and still receive the benefit of c. 61A
classification.  We are confident that
such a result was not one intended by the Legislature.
      Lastly, we are not persuaded by Komosa's
argument that the tax board erred in concluding that he failed to meet his
burden of demonstrating that the portions of his property not devoted to haying
were, in fact, devoted to other purposes incidental to the haying operation.  "The decision of the [tax] board shall
be final as to findings of fact," G. L. c. 58A, § 13,
although it may be challenged as "not supported by 'substantial
evidence'" (citation omitted). 
Schussel v. Commissioner of Revenue, 472 Mass. 83, 86 (2015).  Here, the tax board specifically found that
Komosa's testimony and documentary evidence did not support his assertion that
the remainder of the property was devoted to such incidental uses.  Komosa, himself, characterized such uses as
infrequent.  The tax board weighed the
conflicting evidence regarding the manner in which those portions of the
property not devoted to haying were used and found the evidence presented by
Komosa insufficient to support a finding that the requisite amount of that land
was devoted to incidental uses.  The tax
board's conclusion was supported by substantial evidence.  Id. at 89-90.
      Conclusion.  We agree with the reasoning of the tax board
in all material respects and affirm the decision denying Komosa's application
to classify the parcels at issue pursuant to c. 61A.
So ordered.
 
footnotes
 
[1] Chapter 61A
is entitled "Assessment and Taxation of Agricultural and Horticultural
Land."
 
[2] Additional
requirements include that the land had been actively devoted to agricultural or
horticultural use for at least the two years immediately preceding the tax year
in issue and that the horticultural use had generated more than $500 of income
annually.  G. L. c. 61A,
§§ 4 and 3, respectively.  There is
no dispute that Komosa met these two requirements.
 
[3] The tax board
noted that "the parties did not dispute that haying is considered a
horticultural use under G. L. c. 61A, § 2.
 
[4] The
procedural history and facts are taken from the tax board's findings of fact
and report promulgated on February 24, 2023. 
We supplement our summary with undisputed facts from the record where
necessary to provide context to our discussion.
 
[5] The record
suggests that the parcel numbers derive from assessors' map 51 and lot numbers
96-98 and 100.
 
[6] There are no
residential, industrial, or commercial structures on the remaining parcels.
 
[7] Roll-back
taxes are the difference between the taxes actually paid under c. 61A and what
would have been paid if the land had been assessed at its fair and full value
for up to the preceding five tax years. 
See Sudbury v. Scott, 439 Mass. 288, 295 n.8 (2003).
 
[8] This decision
appears to be a change in how the assessors viewed the property.  The record indicates that the parcels at
issue received c. 61A classification for tax year 2013 without the
inclusion of parcel 51-100.
 
[9] Komosa
appealed this decision to the tax board; however, the appeal was dismissed for
lack of jurisdiction.  The taxpayer has
made no argument here that the tax board erred in dismissing that appeal.
 
[10] General laws
c. 61A, § 2, provides in relevant part:
"Land shall
be considered to be in horticultural use when primarily and directly used in
raising fruits, vegetables, berries, nuts and other foods for human
consumption, feed for animals, tobacco, flower, sod, trees, nursery or
greenhouse products, and ornamental plants and shrubs for the purpose of
selling these products in the regular course of business . . . or
when primarily and directly used in a related manner which is incidental to
those uses and represents a customary and necessary use in raising these
products and preparing them for market" (emphases added).
 
[11] We note that
the tax board's interpretation is further supported by additional language
included in G. L. c. 61A, § 4, regarding "contiguous
land."  That portion states:  
"For the
said tax purposes, land so devoted shall be deemed to include such contiguous
land under the same ownership as is not committed to residential, industrial or
commercial use and which is covered by application submitted pursuant to
section six. . . .  All such
land which is contiguous or is deemed contiguous for purposes of this chapter
shall not exceed in acreage one hundred per cent of the acreage which is
actively devoted to agricultural, horticultural or agricultural and
horticultural uses."
      
The distinction
between contiguous land and the primary land (five acres) which is actively
devoted to a horticultural use means contiguous land (under the same ownership)
may receive the tax benefit of c. 61A only when five acres are actively devoted
to a horticultural use.
 
[12] "Where
the words [of a statute] are plain and unambiguous in their meaning, we view
them as conclusive as to legislative intent" (quotations and citation
omitted).  Dorrian v. LVNV Funding, LLC,
479 Mass. 265, 271 (2018).  Where a statute
contains seemingly conflicting language, we strive to make it "an
effectual piece of legislation in harmony with common sense and sound
reason" and consistent with "the legislative intent" (citations
omitted).  Wolfe v. Gormally, 440 Mass.
699, 704 (2004).